# SOUTHERN RAILWAY COMPANY *v.* CARSON.

## ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CARO-
LINA.

No. 546. Submitted April 4, 1904.—Decided April 18, 1904.

In an action in which no application for removal to the Federal court was made at any time, *held* that if the right existed it furnished no defence to the action on the merits in the state court.

In instructing the jury that railroads are required to keep their appliances in good and suitable order, no right arising under the act of March 2, 1893, in respect of automatic couplers was denied nor was any such specially set up or claimed within § 709, Rev. Stat.

CARSON, a resident of Greenville County, South Carolina, brought this suit in the Court of Common Pleas of that county against the Southern Railway Company, a corporation chartered under the laws of the State of Virginia and engaged in running trains through several States as a common carrier, and J. C. Arwood and J. D. Miller, residents of Greenville County, to recover damages for personal injuries, which, he charged in his complaint, "were due to the joint and concurrent negligence, carelessness and fault of the defendants, and to their joint and concurrent recklessness, carelessness, willfulness and wanton disregard of the plaintiff's rights and safety, in the following manner, to wit:"—setting forth the circumstances of his cause of action. Among other things, plaintiff alleged that he was a flagman in the employment of the Southern Railway Company, and on the day of the accident was ordered by Arwood, the conductor in charge of a certain freight train, on which Miller was engineer, to do the work of brakeman and to couple some of the cars in the train; that these cars were provided with automatic couplers, but one of them was not in proper condition, which rendered it necessary for plaintiff to go between the cars to effect the coupling; and that the acci-

dent thereupon happened by reason of defendants' "joint and concurrent carelessness, negligence, recklessness," etc., in particulars detailed.

Defendants severally demurred, the demurrers were overruled, and defendants excepted. Defendants then answered severally, in identical terms, denying all negligence on the part of defendants, and asserting "that the plaintiff's alleged injury was the result of his own negligence." Trial was had and the jury found for plaintiff against the railway company, judgment was entered, and the railway company appealed to the Supreme Court of the State. That court affirmed the judgment, 46 S. E. Rep. 525, and thereupon this writ of error was allowed.

*Mr. W. A. Henderson* and *Mr. T. P. Cothran* for plaintiff in error.

*Mr. J. Altheus Johnson* for defendant in error.

Mr. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

This case comes before us on motions to dismiss or affirm. There was certainly color for the motion to dismiss as we retain jurisdiction with hesitation, and we will dispose of the case on the motion to affirm.

By some of the many exceptions preserved on the trial and disposed of by the state Supreme Court, it was sought to raise Federal questions in respect of the acts of Congress (1) providing for the removal of cases from a state court to a court of the United States, and (2) providing that railroad companies engaged in interstate commerce shall equip their cars with automatic couplers.

1. The railway company did not at any time apply for the removal of the case to the Circuit Court. Plaintiff below and the company's two co-defendants were citizens of the same State, and the railway company did not make application to

remove before trial on the ground of separable controversy or
want of good faith in the joinder.   Nor did it make such appli-
cation when plaintiff's evidence was in, nor on the whole
evidence.   There was no suggestion throughout the trial that
the joinder was in itself improperly made, but the contention,
as exhibited by the exceptions, was that a verdict could not be
rendered against the company alone, because if it had been
sued alone it would have had the right of removal.   The trial
court charged the jury that if the proof failed to show joint and
concurrent negligence on the part of all the defendants, yet
showed negligence on the part of one or more of them, result-
ing in injury to plaintiff, as the sole and proximate cause
thereof, the jury might find a verdict against such defendant
or defendants as the proof showed were guilty of such negli-
gence; and to this instruction the railway company preserved
an exception.

The railway company also excepted to the refusal of the
court to give several instructions asked on its behalf to the
effect that, as by the allegation of a joint and concurrent tort,
the company had been deprived of the right to remove the
cause, joint and concurrent tort must be made out against the
company and at least one of the other defendants; that to
allow plaintiff to recover without proof of joint and concurrent
tort would deprive the company of the right of removal guar-
anteed by the Constitution and laws; and of its property with-
out due process of law, in contravention of the Fourteenth.
Amendment, in that the company would be deprived of the
right of reimbursement which would otherwise exist.   But
these are matters upon the merits, and recovery against one of
several defendants does not depend on whether, if sued alone,
that defendant might have removed the case.   The right of
removal depends on the act of Congress, and the company not
only on the face of the pleadings did not come within the act,
but it made no effort to assert the right.   The rule is well
settled, as stated by Mr. Justice Gray in *Powers* v. *Chesapeake
& Ohio Railway Company*, 169 U. S. 92, "that an action of

tort, which might have been brought against many persons or against any one or more of them, and which is brought in a state court against all jointly, contains no separate controversy which will authorize its removal by some of the defendants into the Circuit Court of the United States, even if they file separate answers and set up different defences from the other defendants, and allege that they are not jointly liable with them, and that their own controversy with the plaintiff is a separate one; for, as this court has often said, 'a defendant has no right to say that an action shall be several which the plaintiff seeks to make joint. A separate defence may defeat a joint recovery, but it cannot deprive a plaintiff of his right to prosecute his suit to final decision in his own way. The cause of action is the subject-matter of the controversy, and that is, for all the purposes of the suit, whatever the plaintiff declares it to be in his pleadings.' "

The view thus expressed was reiterated in *Chesapeake & Ohio Railway Company* v. *Dixon*, 179 U. S. 131, where the subject was much considered and cases cited. Reference was there made to the fact that many courts have held the identification of master and servant to be so complete that the liability of both may be enforced in the same action. And such is the law in South Carolina. *Schumpert* v. *Southern Railway Company*, 65 S. Car. 332. In that case it was held that under the state Code of Civil Procedure, in actions *ex delicto*, acts of negligence and willful tort might be commingled in one statement as causes of injury; that master and servant are jointly liable as joint tort feasors for the tort of the servant committed within the scope of his employment and while in the master's service; that the objection that if master and servant were made jointly liable for the negligence of the latter the master could not call on the servant for contribution, was without merit, as the rule was, as laid down by Mr. Cooley, (Torts, page 145,) that: "As between the company and its servant, the latter alone is the wrongdoer, and in calling upon him for indemnity, the company bases no claim upon its own misfeasance or default, but

upon that of the servant himself." And see *Gardner* v. *Railway Company*, 65 S. Car. 341. In *Rucker* v. *Smoke*, 37 S. Car. 377, and *Skipper* v. *Clifton Man. Company*, 58 S. Car. 143, it was decided that in actions such as this exemplary damages may be recovered. The suggestion that the State deprived the company of its property by the rulings of the Supreme Court calls for no remark.

2. The act of March 2, 1893, 27 Stat. 531, c. 196, provided, in respect of common carriers engaged in interstate commerce, "that on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." The trial court in one of its instructions set forth this provision, and told the jury that if they found the railway company was engaged, and these cars were being used, in interstate traffic, and that they were not equipped with the automatic couplers required, such failure was negligence; and it was further charged that railroads were required to keep their appliances in safe and suitable order. It is objected that the instructions assumed that if the automatic coupler was out of repair, the company failed to comply with the act of Congress, but we do not think so, and the Supreme Court of the State held that there was no error as Congress must have intended that the couplers should be kept in proper repair for use, and moreover, as such was the law of the State, even if the act of Congress had not specifically imposed this duty. By this ruling no right specifically set up or claimed under the act of Congress by defendant below was decided against. There was no pretense that the act of Congress provided that the automatic couplers need not be kept in order, and whether the cars in question were used in moving interstate traffic and whether the coupling appliances were defective or not, were facts left to the jury and determined by their verdict. The recovery

was not sought on the single ground of want of safe appliances. That was important in its connection with Carson's being ordered to go between the cars, and it was negligence while he was obeying that order, which was chiefly relied on. At all events, the company did not specifically set up or claim any right under the act of Congress or dependent on its construction which was denied by the state courts, and the question raised on these instructions and numerous others on various aspects of the case were not Federal questions, and need not be considered.

*Judgment affirmed.*