# OCTOBER, 1937.

Doy Whiteley, Appellant, v. The Eagle-Picher Lead Co., a Corporation, and J. Edward Webb, Leonard Vaughn, Bartley Geddes, Ray Webb, Charles Kiecker, Charles Smith and Ed Durrall, Respondents.—115 S. W. (2d) 536.

Springfield Court of Appeals. January 10, 1938.

Rehearing denied April 14, 1938.

*Lowis N. Wolf* for appellant.

*A. C. Wallace* and *McReynolds & Flanigan* for respondents.

FULBRIGHT, J.—This is an appeal from the order of the circuit court of Jasper county sustaining defendants'. joint special demurrer to plaintiff's petition in which plaintiff seeks to recover damages for an occupational disease alleged to have been contracted by him. Separate demurrers were filed alleging that the petition does not state sufficient facts to constitute a cause of action against the corporate defendant and the individual defendants, but no ruling was made by the court on either of these demurrers. Subsequently, an amended special demurrer to the petition by all of the defendants was filed, assigning as grounds therefor, "1. Because it does not state facts sufficient to constitute a cause of action against said defendants; 2. Because there is a defect of parties defendant; 3. Because several causes of action have been improperly united." By leave of court plaintiff amended his petition by interlineation reducing the amount sued for from $25,000 to $7,500. Defendants' amended and special demurrer was by the court sustained and as the plaintiff refused to plead further, his petition was dismissed by the court and the defendants discharged. Thereupon plaintiff duly appealed to this court.

Since this cause comes to us on appeal from the action of the trial court in sustaining a demurrer to the petition, said petition, omitting caption and signatures, although somewhat lengthy, is set out in full.

"Comes now the plaintiff, and for his cause of action against the defendants, states that the defendant, The Eagle-Picher Lead Company, is a corporation duly organized and existing according to law, and as such, was at all of the times herein mentioned engaged in the business of manufacturing, smelting and refining lead and lead products from its raw state, at various places throughout the United States, and particularly at Joplin, Missouri, where it owns and operates a plant and place of business; that the defendants, John A. Schaeffer and J. Edward Webb, were the managers, officers and directors of said defendant corporation, and as such were the persons who were chargeable with the duty, imposed by law, of carrying out and performing the regulations of the statutes of the State of Missouri, for the violation of which complaint is herein

made; that the defendants, J. Edward Webb, A. J. Smith, Leonard Vaughn, Bartley Geddes, Ray Webb, Charles Kiecker, Charles Smith and Ed Durrall were at all of the times herein mentioned, foremen and vice-principals of the said defendant corporation, and as such, had charge, direction and supervision of the work and the men employed by the defendant corporation in the manufacture and production of lead and lead products at said company's place of business in Joplin, Missouri.

"Plaintiff states that for a number of years, prior to October, 1933, he entered the employ of the defendant, The Eagle-Picher Lead Company, and worked for said defendant company until about October, 1933, at its plant and place of business located on 'Smelter Hill,' in Joplin, Missouri, during all of which time he was directed and required by said defendants to work in the W. C. cleanout, litharge, slag-eye, red lead, S. W. C. departments and blast furnace and mill room, and where lead and lead compounds in their various forms were constantly and continuously used and employed; that in the doing of said work, large and dangerous quantities of noxious, harmful and poisonous dusts, gases, smoke and fumes were produced, created and generated, and the air which plaintiff was required to breathe, and in which he was directed and required to work, was constantly ladened with said substances, consisting in lead dusts, gases, smoke and fumes, by reason of the performance of said processes and work; that said conditions existed and prevailed throughout said defendant company's entire plant, and in the eating quarters and wash rooms; that said harmful, noxious and poisonous lead dusts, fumes and smoke were blown into the room in which the plaintiff was directed to work from all adjacent departments.

Plaintiff further states that all of said defendants had charge, control and supervision over the plaintiff and his work, and directed the plaintiff in the manner of doing the work, and all of said defendants knew the conditions and circumstances as aforesaid, and under which plaintiff worked, and knew that by requiring plaintiff to work in said places where said noxious, harmful and poisonous lead dusts, fumes, smoke and gases were produced, created and generated, that plaintiff would be required to, and did breathe, inhale and absorb said poisonous, harmful and noxious substances, and by so doing, plaintiff's health would likely be greatly and seriously weakened and impaired, and that the cumulative effect of said inhalations and absorptions would produce the dangerous and deadly disease of lead poisoning.

"Plaintiff further states that the defendants negligently and carelessly failed to warn the plaintiff of the danger of inhaling and absorbing said noxious, harmful and poisonous dusts, fumes, smoke and gases, although said defendants, and each of them knew,

or by the exercise of ordinary care on their part, should have known that the inhalation and absorption of said substances aforementioned, would be dangerous and injurious to plaintiff's health.

"Plaintiff further states that at various and sundry times (the exact dates are unknown to the plaintiff), during the course of his employment, complaint was made of said dust, smoke and fumes being in the air, but said defendants, and all of them, negligently neglected and refused to furnish plaintiff with an adequate and sufficient respirator and assured plaintiff that working under said conditions would not hurt him, and said defendants negligently and carelessly ordered and directed plaintiff to proceed with his said work and to work under said conditions so that he would be required to breathe and absorb said lead substances aforementioned, when they, and each of them knew, or by the exercise of ordinary care on their part, should have known that by requiring plaintiff to work under said conditions, it would be harmful to plaintiff and injurious to his health, and plaintiff states that when said defendants gave plaintiff said negligent orders, the said defendants were acting within the scope and course of their employment as foremen and vice-principals of the defendant, The Eagle-Picher Lead Company, and were doing a part of the defendant's company's work at the time, and plaintiff states that acting upon said orders and relying upon said foremen and vice-principals' said assurances of safety and relying upon said foremen's superior knowledge and judgment, as foremen and vice-principals of The Eagle-Picher Lead Company, the plaintiff continued in said work.

"Plaintiff states that the defendants negligently and carelessly violated sections 13252, 13254, 13255, 13258, 13259, 13260, 13264, of the Revised Statutes of Missouri, 1929, in the following particulars:

"1. The defendants failed to exercise ordinary care to employ any reasonably effective means, methods and appliances to prevent plaintiff's health from being impaired by said dusts, fumes and smoke and lead compounds, although by the exercise of ordinary care, it could have done so.

"2. The defendants failed to provide plaintiff with an adequate and approved respirator or breathing device in good condition, without cost to the plaintiff, so as to prevent the inhalation of said noxious, harmful and poisonous substances.

"3. The defendants failed to provide for and place at the disposal of the plaintiff and maintain in good condition, without cost to the plaintiff, working clothes to be kept and used exclusively by him.

"4. The defendants failed as often as once every calendar month to cause plaintiff to be examined by a competent, licensed and reputable physician for the purpose of ascertaining if there existed

in the plaintiff any industrial or occupational disease due to or incident to the character of work in which plaintiff was engaged.

"5. The defendants failed to provide, separate and apart from the workshop in which plaintiff was engaged, a dressing room and lavatory for the use of defendants' employees, particularly the plaintiff, which was free from said noxious and poisonous substances, aforementioned, and failed to provide it with a sufficient number of basins or spigots, or with adequate washing facilities, including hot and cold water, or with clean, individual towels and soap, or with sufficient shower baths.

"6. The defendant failed to provide its employees, particularly the plaintiff, with eating quarters which were free from said noxious and poisonous dusts, fumes, gases, smoke and lead compounds, and failed to provide him with sanitary drinking fountains containing wholesome drinking water, without cost to and within reasonable access of the plaintiff.

"7. The defendants failed to provide and maintain adequate devices for carrying off all of said poisonous and injurious fumes, dusts and smoke and failed to provide and maintain adequate and efficient facilities for carrying off all of said injurious dusts, fumes, gases, smoke and lead compounds, which were created, produced and generated at the place and in the room where plaintiff was directed and required to work.

"8. The defendants failed to post in a conspicuous place in the room in which plaintiff was required to work an appropriate notice of the known dangers to the health of its employees, particularly the plaintiff, arising from the inhalation and absorption of the substances aforementioned, and of the performance of said work, and simple instructions as to any known means of avoiding, as far as possible, the injurious consequences thereof, although it was possible for defendants to have done so, and thereby avoided plaintiff's injuries.

"Plaintiff further states that the defendants failed to furnish plaintiff with a reasonably safe place in which to work, in this, to-wit:

"That the conditions under which plaintiff was required to work were such that the air was constantly filled with dust, fumes, gases, smoke and lead compounds in such quantities that it was injurious and harmful to the health of the plaintiff and which directly brought on the conditions and injuries from which plaintiff suffers as hereinafter set out, and that the defendants negligently and carelessly failed to provide the plaintiff with any adequate or efficient breathing device or respirator to prevent plaintiff from inhaling said substances aforementioned, and the defendants negligently and carelessly failed to provide a sufficient or adequate device to eliminate, remove and withdraw said noxious and poisonous sub-

stances, aforementioned, from said room in which plaintiff was required and directed to work.

"Plaintiff further states that each and every one of the foregoing negligent acts and omissions of each and every one of the defendants operated jointly and concurrently to, and did, cause plaintiff to contract lead poisoning by the continual and gradual absorption of said noxious and poisonous substances, aforementioned, through the pores of the skin and by inhalation and through the mouth, throat, nostrils and lungs, to his injury, as follows:

"That his entire body and all of his internal organs, nerves, vessels, glands, muscles and ligaments were poisoned and rendered painful and inefficient therefrom; that his lungs, kidneys and stomach have been poisoned and injured, causing him to suffer excruciating pains and to cause plaintiff to become weakened, emaciated and feeble, so that he was and is unable to eat or assimilate his food or to get his natural rest; that his teeth have become loosened and rotten and his gums to turn blue and eaten away; that he suffers from constipation, headaches, cramps, lead neuritis, anemia, kidney trouble and loss of appetite; that his eyesight and hearing have been impaired; that he has lost his strength and the muscles of his legs, arms, shoulders and back have become flabby and atrophy has set in; that he has suffered and will always suffer great physical pain and mental anguish; that all of said injuries and conditions are serious, permanent and lasting and have resulted in rendering plaintiff a hopeless and permanent physical wreck, and said conditions are progressive and will surely become worse; that prior to the lead poisoning of the plaintiff he was an able, robust, healthy man, strong and hearty and was able to and did earn money; that solely by reason of said injuries and said lead poisoning he has become and now is and will forever be totally disabled from work and from earning a livelihood, and since October, 1933, he has lost and will lose in the future the sum of twenty-five dollars ($25) per week because of such injuries and conditions, and by reason of the premises plaintiff has been damaged in the sum of twenty-five thousand dollars ($25,000).

"Wherefore, plaintiff prays judgment against the defendants and each of them in the sum of twenty-five thousand dollars ($25,000) together with the costs of suit."

The assignment of errors are as follows:

"1. The trial court erred in sustaining the defendants' joint demurrer to plaintiff's petition.

"2. The trial court erred in dismissing plaintiff's petition and discharging the defendants, because the petition properly states a good joint cause of action against all of the defendants, not only for common law negligence, but also for negligence arising out of violations of the Missouri Occupational Disease Statutes.

"3. The trial court erred in sustaining the defendants' joint demurrer to plaintiff's petition on any of the grounds of said demurrer, and thereafter dismissing the petition and discharging the defendants."

In passing upon these assignments they will be considered together.

It has been held that under the common law an employee had no right of action against his employer for damages arising from diseases contracted in the course of his employment as incident thereto, absent a showing of negligence on the part of the employer. In other words, the employee assumed the risk and hazard of his employment, but he did not assume the risk or dangers arising from negligence of his employer in connection with such employment. The petition in the instant case combines both common law and statutory negligence in one count. This is permissible under the decisions of our courts. [Wolf v. Mallinckrodt Chemical Works, 81 S. W. (2d) 323; White v. St. Louis & M. R. R. Co., 202 Mo. 539, 101 S. W. 14; Langeneckert v. St. Louis Sulphur & Chemical Co., 65 S. W. (2d) 648; St. Joseph Lead Co. v. Jones, 70 F. (2d) 475.]

That the petition states a cause of action, and only one, against the corporate defendant, we think, there is no doubt. The vital questions to be decided are whether or not the petition on its face charges a joint cause of action, and only one, against the corporate defendant and the individual defendants, and whether there is a misjoinder of parties. Every charge of negligence contained in the petition is levelled against all of the defendants. It is alleged, in substance, that all the defendants had charge, control and supervision over plaintiff and his work, and directed the plaintiff in the manner of doing the work, and that they all knew the conditions, circumstances and perils surrounding plaintiff; that they knew when they required plaintiff to work in the places and under the conditions alleged that it would be harmful to him. Therefore, on the face of the petition, it occurs to us that a cause of action, and only one, is alleged against said defendants; that there is no misjoinder of parties; and that the petition is not subject to demurrer on any of the grounds set out in the special demurrer, unless it be held, as a matter of law, that the individual defendants cannot be jointly liable with the corporate defendant if the alleged failure to comply with the Missouri statutes applies only to the employer.

The defendants are charged specifically with the negligent violation of sections 13252, 13254, 13255, 13258, 13259, 13260, 13264, of the Revised Statutes of Missouri, 1929, as will be observed by reference to the petition. Respondents insist that these allegations of statutory negligence state no cause of action against the individual defendants for which they can be held to respond in damages. They further insist that "to impose upon the individual defendants herein

the *liability* under the petition as drawn under these sections, would be to construe *the statute to* mean that these agents of the company, the foremen and vice-principals, would have to furnish at their own expense working clothes and respirators, see that the employees were examined by reputable physicians once a month, furnish dressing rooms and lavatories and lockers, furnish an eating place separate and apart from that part of the plant where the work or process is carried on, provide facilities for carrying off injurious dusts, and post notices; and, if they did not do these things, to abandon their jobs.'' We cannot concur in these deductions when applied to the petition involved, and we find no decision which we think supports respondents' theory. While the following decisions are not directly in point, we think they, by inference at least, hold to the contrary: Robinson v. Moark-Nemo Consol. Mining Co. et al., 163 S. W. 885, 196 S. W. 1131; Dietrich v. Cape Brewery & Ice Co. et al., 286 S. W. 38; State v. Hemenover, 188 Mo. 381, 87 S. W. 482; State ex rel. Hancock v. Falkenhainer, 316 Mo. 651, 291 S. W. 466; Orcutt v. Century Building Co. et al., 201 Mo. 424, 99 S. W. 1062, 8 L. R. A. (N. S.) 929; Smith v. Greer, 216 Mo. App. 155, 257 S. W. 829; McFarland v. Goodrich Rubber Co. et al., 47 F. (2d) 44; Davis v. Standard Oil Co. of Ind. et al., 47 F. (2d) 48; Brunski v. Ford Motor Co. et al., 299 F. 807; Northwest Theatres Co. et al. v. Hanson, 4 F. (2d) 471.

In the case of James M. Coy v. Eagle-Picher Lead Co. et al., in the District Court of the United States for the Southwestern Division of the Western District of Missouri, wherein the petition is almost identical with the petition in the instant case, Judge Reeves in a memorandum opinion (September 11, 1934) on a motion to remand, after discussing the case, said: ''It must be concluded that the plaintiff in his petition states a joint cause of action against all of the defendants.'' In a similar case, William Martin v. The Eagle-Picher Lead Co. et al., Judge Reeves in a memorandum opinion (October 22, 1937) among other things, said: ''It is earnestly urged that the safety appliance statutes could only be violated by the factory owner. This could not be the law for the reason that a corporation acts only through its agents. Such agents can be negligent within the scope of their authority or employment, and their acts in negligently performing the statutory duties imposed upon the master would make both liable for injuries suffered by employees. The petition states that the acts of alleged negligence were committed by each of the defendants and that their several acts 'operate jointly and concurrently to' injure the plaintiff.''

From what we have said, we do not wish to be understood as holding that respondents' contention would be without merit if the only ground of negligence charged in the petition was the failure of the employer to comply with the provisions of the statutes there-

in mentioned. We are not attempting to pass upon that question. It is unnecessary to do so in disposing of this case. In the petition before us, as heretofore stated, common law and statutory negligence are intermingled. We do not understand that each and every one of the defendants must be guilty of each and every one of the acts of negligence charged in the petition. It is only necessary in order to make joint liability that the negligent acts of each defendant be concurrent and contribute to the injury. They need not be, and generally are not, identical. [Zichler v. St. Louis Public Service Co., 59 S. W. (2d) 654; Sanders v. Marks et al., 60 S. W. (2d) 692.] We are of the opinion that since our courts permit the charging of both common law and statutory negligence in the same count, and as constituting one cause of action, the negligent acts complained of may be of common law origin as to one defendant and statutory as to another, and if concurrent, and both operate to bring about plaintiff's injury, a joint cause of action should be upheld. [White v. St. Louis & M. R. R. Co., supra.] The petition in the instant case alleges that "each and every one of the foregoing negligent acts and omissions of each and every one of the defendants operated jointly and concurrently to, and did, cause" plaintiff's injuries.

After carefully examining the authorities cited by appellant and respondents, and many other cases in this and other jurisdictions, we have come to the conclusion that the petition herein, on its face, states a joint cause of action against all of the defendants; that it is not subject to demurrer on the ground that there is a misjoinder of causes of actions, or that there is a misjoinder or defect of parties defendant. The judgment of the trial court is therefore reversed and the cause remanded with directions that the demurrer be overruled; that the order dismissing the petition and discharging the defendants be set aside; and that the cause be re-docketed for trial. *Allen, P. J.,* and *Smith, J.,* concur.